**OKLAHOMA ALLIED TELEPHONE COMPANY, Appellee,**

v.

**CITY OF POTEAU, Oklahoma, et al., Appellants.**

**No. 46216.**

Supreme Court of Oklahoma.

Dec. 17, 1974.

William L. Anderson, Oklahoma City, for appellee.

James E. Hamilton, Larry B. Lucas, William D. Mobley, Mike Sullivan, Poteau, Jack E. Rider, Lawrence T. Spray, Stilwell, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellants.

WILLIAMS, Vice Chief Justice:

This is an appeal by certain protestants from an order of the Corporation Commission granting in part a rate increase sought by the Oklahoma Allied Telephone Company, which serves numerous municipalities and rural areas in southeastern Oklahoma. At the time the rate increase was requested (1971), the company was operating under rates approved in 1959. The company sought rates which would have increased its operating income about $200,000; the rates allowed by the Commission were designed to provide for an increase of about $142,000.

After protestants filed their original brief in this Court, the Commission filed the "Statement of Reasons" provided for in Article 9, Section 22, Oklahoma Constitution. This Statement, which by the terms of the cited section must be considered by this Court, answered most of the questions raised in protestants' original brief, and this opinion will be addressed principally to protestants' reply brief thereafter filed.

The arguments in that brief are concerned principally with the methods used in determining the rate base, and protestants take the position that in the following language from the fourth paragraph of the Statement of Reasons, the Commission "recited the method to be used, found that the Company had used the proper method and approved the results":

"* * * The applicant made a study designed to reflect the value of property

under present economic conditions by an established standard method of using the Handy-Whitman · indices to arrive at present replacement costs, less an allowance for age and condition and by using equal weight to that study and the original cost arriving at a rate base of $5,219,666.00, including an allowance for material, supplies and working capital as set forth in applicant's Exhibit 15 in this cause. * * *"

We do not agree that in the quoted language the Commission "recited the method to be used, found that the Company had used the proper method and approved the result." Also, protestants have obviously overlooked the balance of the same paragraph, which is not mentioned in their brief:

"* * * *The Commission did not adopt either of these methods in arriving at the rate base in this case.* We recognize that the 'original cost' rate base probably is a minimum rate base and that the so-called 'fair value' method of rate base is probably the maximum. Under the Applicant's minimum theory of rate base, the rate of return would be just under 8% and under the maximum possible rate base, the rate of return would be approximately 6%." (Emphasis added.)

■ We find evidence to support these conclusions. When the above percentage figures (8% and 6%) are applied respectively to the original cost rate base used by the company ($3,969,794, which protestants do not question) and to the fair value rate base ($5,219,666), after minor adjustments by the Commission which are not seriously questioned, the results are approximately the same as the total figure for net income contemplated by the Commission when it adopted the approved rates (about $320,000).

■ Protestants also argue, not entirely without justification, that certain language of the Commission in the sixth paragraph of the Statement of Reasons indicates an intention to allow a rate of return of no

more than 7% on an original cost rate base and no less than 6% on a fair value rate base. For reasons set out below, we do not agree.

The computations of rate base and rates of return thus far mentioned were made on the basis of the cost of materials, labor, supplies, etc., at 1971 levels. However, there was uncontradicted evidence that the company had embarked upon a necessary program of replacing antiquated and worn out equipment, and upgrading of its plant and services, which by the end of 1974 would require capital expenditures of over $3,000,000. The Commission refused to consider these proposed expenditures in its rate base and rate of return computations. However, in the lengthy fifth paragraph of the Statement of Reasons, the Commission demonstrated that even allowing for these additional capital expenditures in the rate base, and using projected figures for expenses, revenues and net income at 1974 levels, the *same* approved rates which produced rates of return of 8% and 6% respectively at 1971 levels would produce rates of return of approximately 7% and 6% at 1974 levels. Upon a careful reading of the fifth and sixth paragraphs of the Statement of Reasons, we are convinced that the Commission's use of the latter percentage figures (7% and 6%) in the sixth paragraph was intended as references to the rates of return at 1974 levels and not 1971 levels.

■ Included in the rate base computations of both the company and the Commission was an allowance of $146,567 for plant actually under construction in 1971. Protestants argue that this allowance was improper because of the holding of this Court in Southwestern Bell Tel. Co. v. State, Okl., 230 P.2d 260. A careful reading of the opinion in that case shows that the allowance for plant under construction was disapproved because "* * * interest on the account representing uncompleted projects under construction was charged by the Company as a part of the fixed capital cost, and that to permit it also to col-

lect a rate on the investment would be to allow it a double rate." See page 266 of the Pacific Reporter. In the case now before us the opposite situation is presented. There was uncontradicted evidence from Mr. S., the company vice president, that interest on the account representing work in progress had not been included in the fixed charges which were deducted as a part of the gross expenses before the net income and rate of return were computed. The company's Exhibit 9 on revenues and expenses, which was accepted and used by the Commission, also shows this to be true. Inclusion of the allowance for plant under construction in the rate base in this case therefore does not permit the recovery of a "double rate", as it would have done in the Southwestern Bell case.

■ We hold that the Commission has regularly pursued its authority and that the findings and conclusions of the Commission are sustained by the law and substantial evidence; see Article 9, Section 20, Oklahoma Constitution. The order of the Commission is therefore affirmed.

All the Justices concur.